Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Sarper Unal (SBN 341739)
sunal@ahdootwolfson.com
Lisa Cintron (SBN 356009)
lcintron@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

EDEN GORDLEY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

TWITCH INTERACTIVE, INC. and AMAZON.COM, INC.

Defendants.

Case No. 3:26-cv-9036

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Eden Gordley ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to herself and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against Defendants Twitch Interactive, Inc. ("Twitch") and Amazon.com Inc. ("Amazon") (collectively, "Defendants").

## NATURE OF THE ACTION

1. This action concerns the commercial value of a person's own face, voice, and name, and who is entitled to capture it. Plaintiff Gordley and the members of the proposed Class are individual creators who built audiences on Twitch by putting themselves on camera and on microphone. What they supplied to the platform was not merely video files. It was recorded human performance: their appearance, their speech, their mannerisms, their names, and the personas by which their audiences know them. Defendants took that material and put it to a use the creators never agreed to and were never told about. Rather than negotiate for the rights they wanted, or pay the going rate that other buyers of comparable material pay, Defendants routed the recorded performances of millions of creators into the development of commercial generative artificial intelligence systems that Defendants own, market, and monetize.

2. Defendants understood the value of what they were taking. Recorded audiovisual material featuring identifiable human beings speaking, reacting, and moving is the scarcest and most expensive category of machine-learning training input, and an open commercial market exists in which developers of generative artificial intelligence systems pay for it by the image, by the minute, and by the hour. Defendants elected not to participate in that market with respect to their own users. They took the material for free instead.

3. Throughout the period relevant to this action, Plaintiff and Class members never provided affirmative informed consent to such practices.

4. California law, under Cal. Civ. Code § 3344 and the parallel common-law tort of commercial misappropriation, does not permit this. It has long protected each person's exclusive right to decide whether, by whom, and on what terms his or her name, voice, photograph, and likeness may be used for commercial gain. This protection reaches the knowing commercial use of a person's

identifying attributes in and for the products a defendant sells — and here the identifying attributes were not incidental to the product. They were the input the product required.

5. Plaintiff brings this action on behalf of herself and a nationwide Class of Twitch creators to establish that Defendants' conduct was unlawful, to recover the value Amazon extracted without paying for it, to disgorge the profits Amazon earned from systems built on the Class Members' identities, and to stop Defendants' practice going forward.

6. Plaintiff seeks statutory and actual damages, restitution and disgorgement from Amazon and requests injunctive relief from Defendants, as well as attorneys' fees and costs.

7. Accordingly, Plaintiff, individually and on behalf of the Class, asserts claims for (1) violation of Cal. Civ. Code § 3344, (2) violation of the California Unfair Competition Law Cal. Bus. & Prof. Code §§ 17200, et seq., (3) violation of California's common-law Right of Publicity, and (4) unjust enrichment.

## PARTIES

8. Plaintiff Eden Gordley is an adult citizen of the state of California and resides in Los Angeles, California. Plaintiff Gordley has maintained and operated a channel on Twitch to create content since approximately 2025. Plaintiff's channel remains active as of the filing of this complaint.

9. Defendant Twitch Interactive, Inc. ("Twitch") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 350 Bush Street, San Francisco, California 94104.

10. Twitch owns and operates the live-streaming platform available at www.twitch.tv and through the Twitch mobile, console, and television applications. On that platform, individual content creators — known as streamers — broadcast live audiovisual programming to viewers, retain recordings and excerpts of those broadcasts, and interact with their audiences in real time through channel chat.

11. Twitch describes the scale of that platform in its own commercial materials. According to Twitch, "[o]n average, there are 105 million monthly visitors to the Twitch site, and in 2023, the community watched over 1.3 trillion minutes of content." Twitch has separately reported an average

of approximately 35 million daily visitors, approximately 7 million unique streamers going live each month, and streamers broadcasting in 35 languages.[1]

12. Defendant Amazon.com, Inc. ("Amazon") is a corporation organized and existing under the laws of the State of Delaware, with its principal executive offices at 410 Terry Avenue North, Seattle, Washington 98109-5210.

13. Amazon acquired Twitch in 2014. On August 25, 2014, Amazon announced that it had "reached an agreement to acquire Twitch Interactive, Inc., the leading live video platform for gamers," and that, "[u]nder the terms of the agreement, which has been approved by Twitch's shareholders, Amazon will acquire all of the outstanding shares of Twitch for approximately $970 million in cash, as adjusted for the assumption of options and other items." Amazon subsequently reported to the Securities and Exchange Commission that, "[o]n September 25, 2014, we acquired Twitch Interactive, Inc. ('Twitch') for approximately $842 million in cash, as adjusted for the assumption of options and other items," and that it "acquired Twitch because of its community and the live streaming experience it provides."[2]

14. Twitch has since been operated as a wholly owned subsidiary within Amazon's corporate enterprise. Amazon acquired all of Twitch's outstanding shares, and Twitch identifies Amazon.com as "Twitch's parent company" in materials Twitch itself publishes.[3]

15. Amazon develops, markets, offers, and monetizes generative artificial intelligence models and services. Amazon's Nova family of foundation models is made commercially available through Amazon Bedrock, the managed generative-artificial-intelligence platform offered by Amazon

---

[1] Twitch Advertising, https://twitchadvertising.tv/ (last visited Aug. 26, 2026); Twitch Advertising, *Audience*, https://twitchadvertising.tv/audience/ (last visited Aug. 26, 2026).

[2] Press Release, Amazon.com, Inc., *Amazon.com to Acquire Twitch* (Aug. 25, 2014), https://press.aboutamazon.com/2014/8/amazon-com-to-acquire-twitch; Amazon.com, Inc., Quarterly Report (Form 10-Q), Note 4 — Acquisitions, Goodwill, and Acquired Intangible Assets (quarter ended Sept. 30, 2014), https://www.sec.gov/Archives/edgar/data/1018724/000101872414000055/amzn-20140930x10q.htm.

[3] Twitch Interactive, Inc., *Twitch Global Employment Candidate Privacy Notice* (last updated May 11, 2026), https://careers.twitch.com/en/legal/privacy-notice/ (referring to "Twitch's parent company, Amazon.com"); Press Release, Amazon.com, Inc., *Amazon.com to Acquire Twitch* (Aug. 25, 2014), https://press.aboutamazon.com/2014/8/amazon-com-to-acquire-twitch ("Amazon will acquire all of the outstanding shares of Twitch").

Web Services. Amazon states that its "Nova foundation models deliver frontier intelligence and industry-leading price-performance," that Nova "accelerates AI innovation across modalities and use cases — including text, image, video, speech, API calling, and agentic AI," and that "[t]o start building with Amazon Nova, you must access the models through an API using Amazon Bedrock." Amazon describes Bedrock as "[t]he platform for building generative AI applications and agents at production scale," which "powers generative AI for more than 100,000 organizations worldwide — from startups to global enterprises across every industry."[4]

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00) and is a class action in which one or more Class members are citizens of states different from Defendants.

17. This Court has personal jurisdiction over Twitch because Twitch maintains its principal place of business in California, within this District, and because the conduct challenged here — the operation of Twitch, the collection and retention of creator content, and the transfer of that content for use in artificial intelligence development — was directed and carried out from that place of business.

18. This Court has personal jurisdiction over Amazon because Amazon purposefully directs substantial and continuous business activity into California, derives substantial revenue from California residents, owns and controls the California-based enterprise through which the content at issue was obtained, and purposefully availed itself of the California forum, including by purposefully directing extensive business activity to California. Defendants' conduct was expressly aimed at California and caused injury that Defendants knew would be suffered in California.

19. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Twitch resides in this District and because this District is where a substantial part of the acts and omissions

---

[4]Amazon Web Services, *What is Amazon Nova?*, https://docs.aws.amazon.com/nova/latest/userguide/what-is-nova.html (last visited Aug. 26, 2026); Amazon Web Services, *Amazon Bedrock*, https://aws.amazon.com/bedrock/ (last visited Aug. 26, 2026).

underlying Plaintiff's claims took place, including the operation of Twitch, the storage and administration of the creator content at issue, and the decisions to make that content available for artificial intelligence development.

## FACTUAL ALLEGATIONS

### A. Twitch Was Built on Creators Who Publish Their Own Faces, Voices, and Names

20. Twitch is the leading video-sharing and live-streaming service on which individual creators publish audiovisual content to an audience.

21. The content that gives Twitch its commercial value is generated by individuals, not by Defendants. Creators supply the equipment, the setting, the subject matter, the preparation, and — most importantly for this action — themselves.

22. A Twitch video or broadcast is not a neutral recording of a screen. It is a performance. The creator speaks to an audience, reacts in real time, narrates, jokes, argues, teaches, and improvises. The creator's voice carries the content; the creator's face, gestures, and timing supply the rest. Audiences follow particular creators rather than particular subjects precisely because the performer is what distinguishes one channel from another.

23. That is why a creator's identity is the creator's economic asset. A channel's audience, its sponsorship value, its subscription revenue, and its owner's ability to be hired or paid at all rest on the recognizability of a specific person — a name, a voice, a face, a manner. Creators invest years and substantial sums building that recognizability.

24. Many creators appear on camera, producing hours of footage of their actual faces, bodies, expressions, and gestures. Others appear only by voice, or through an avatar or persona they voice and control. In either case, the creator contributes attributes by which viewers identify that particular human being: a natural speaking voice, a name or handle, a characteristic manner of speech and reaction, and a persona associated with a specific account.

25. Twitch causes that material to persist by allowing content to remain accessible after the original live broadcast ends. Streams may be preserved as videos-on-demand ("VODs"), while segments can also be saved as clips or highlights that remain linked to the creator's channel and available for viewers to watch.

26. Over time, Twitch accordingly accumulated an enormous and continuously replenished archive of recorded human performance, attached to named accounts and organized by creator.

27. Creators did not understand themselves to be contributing to such an archive for Defendants' unrelated commercial use.

**B. <u>Recorded Human Performance Is the Scarcest and Most Expensive Input in Generative AI, and It Has an Established Market Price</u>**

28. Generative artificial intelligence systems are not authored in the ordinary sense. They are trained. Their capabilities are a function of the volume, quality, and specificity of the material fed into them, which means that the material itself is the principal input cost of the industry.

29. Not all training material is equally useful, and the industry knows precisely which material it wants most. Extended audiovisual recordings of identifiable human beings speaking, moving, gesturing, and reacting are the hardest category of data to obtain at scale and the most useful for the model capabilities with the greatest commercial value — video generation, speech synthesis, speech recognition, and the depiction of human subjects.

30. Model developers say so in their own technical publications. Researchers at Meta disclosed that, in constructing the training set for a commercial video-generation model, they assembled on the order of one hundred million video-text pairs, deliberately curated for human subjects: the team "established a taxonomy of 600 human verbs and expressions and performed zero-shot text-to-video retrieval using the taxonomy to select videos with humans in them," and engineered the high-resolution portion of the corpus so that "at least 60%" of those videos contain human beings. The same publication describes pre-training on approximately one million hours of audio.[5]

31. Similarly, the developer of a widely deployed commercial speech-recognition model reported training it on "680,000 hours" of human speech drawn from the internet.[6]

---

[5]Adam Polyak et al., Movie Gen: A Cast of Media Foundation Models, (Oct. 17, 2024), https://arxiv.org/html/2410.13720v1.
[6]Alec Radford et al., Robust Speech Recognition via Large-Scale Weak Supervision, at 1-6, https://cdn.openai.com/papers/whisper.pdf.

32. Because this material is both essential and scarce, a commercial market for it exists, and its prices are known. Reporting sourced to the sellers themselves describes prevailing rates of "$1 to $2 per image, $2 to $4 per short-form video and $100 to $300 per hour of longer films."[7]

33. Sellers of licensed audiovisual material report that market in their public financial disclosures. One large stock-media licensor, Shutterstock, Inc., disclosed revenue of $120.3 million in 2024 from its data offering, growth of 15% over the prior year, and $203.3 million in its data, distribution, and services segment in 2025 — while describing its business as supplying "world-class stock assets for model training."[8]

34. User-generated-content platforms have likewise monetized their users' material for artificial intelligence training at nine-figure values. One such platform disclosed to investors that it had entered "data licensing arrangements with an aggregate contract value of $203.0 million and terms ranging from two to three years," and its most recently reported quarter reflected $43 million in the revenue line attributable to that business, up 24% year over year.[9]

35. Independent estimates place the market for artificial intelligence training datasets at approximately $3.2 billion in 2025, growing to a projected $16.3 billion by 2033, with image and video data constituting the largest single segment at roughly 41.9% of 2025 revenue.[10]

36. It is clear that the material Defendants took from Plaintiff and the Class had, at the time it was taken, an ascertainable market price that other participants in the same industry paid. Defendants avoided that cost entirely as to their own users.

---

[7] Katie Paul & Anna Tong, Inside Big Tech's underground race to buy AI training data (Apr. 5, 2024). https://www.investing.com/news/stock-market-news/inside-big-techs-underground-race-to-buy-ai-training-data-3367240.

[8] Shutterstock, Inc., Shutterstock Reports Full Year 2024 and Fourth Quarter Financial Results (Feb. 25, 2025), https://investor.shutterstock.com/news-releases/news-release-details/shutterstock-reports-full-year-2024-and-fourth-quarter-financial; Shutterstock, Inc., Shutterstock Reports Full Year 2025 and Fourth Quarter Financial Results (Feb. 17, 2026), https://investor.shutterstock.com/news-releases/news-release-details/shutterstock-reports-full-year-2025-and-fourth-quarter-financial.

[9] Kyle Wiggers, Reddit Says It's Made $203M So Far Licensing Its Data, (Feb. 22, 2024) https://techcrunch.com/2024/02/22/reddit-says-its-made-203m-so-far-licensing-its-data.

[10] Grand View Research, AI Training Dataset Market Size, Share & Trends Analysis Report, https://www.grandviewresearch.com/industry-analysis/ai-training-dataset-market.

**C. Defendants Never Obtained Consent for the Alleged Behavior**

37. Throughout the relevant period, Plaintiff and Class members never provided affirmative informed consent to Defendants' practices of collecting their content and channeling to the training of generative AI in separate enterprise.

59. The result is that Defendants obtained for free, and retain, the commercial value of identities that their own conduct shows they knew they were not entitled to use.

**PLAINTIFF'S EXPERIENCE**

60. Plaintiff Gordley created her Twitch account in 2025 and began publishing content soon after her account creation.

61. Plaintiff has since created numerous content streaming video games that included Plaintiff on camera, her natural voice, handle, and persona.

62. Plaintiff derives and has sought to derive economic value from the channel through subscriptions, advertising revenue, viewer contributions, sponsorships, merchandise, or other monetization.

63. Plaintiff has never authorized Defendants to use her voice, face, name, persona, or channel content as training or development material for Defendants' generative artificial intelligence models. Plaintiff never negotiated a license for such use and never received any compensation for it.

64. Plaintiff received no notice that her content and identity were being used for that purpose.

65. Had Defendants disclosed the practice, Plaintiff would not have published her content on Twitch on the same terms.

66. Plaintiff and the Class were deprived of the licensing value of their recorded identities. An established market exists in which developers of generative artificial intelligence systems pay for audiovisual material of the kind Plaintiff and the Class produced. Defendants took that material without paying the price that market sets, and Plaintiff and the Class received nothing for it.

67. Plaintiff and the Class have suffered an injury that cannot be undone by cessation alone. Once recorded performance has been ingested and used to fit a model's parameters, the resulting system carries forward what it learned. Defendants continue to possess, deploy, license, improve, and

earn revenue from models, datasets, checkpoints, and derived systems developed with the Class members' material, and Defendants have not represented that any of it will be purged.

68. Plaintiff and the Class did not receive the benefit of their bargain with Twitch. Whatever revenue share, distribution, or promotional benefit a creator received compensated the disclosed relationship — publishing and monetizing content on Twitch. It did not compensate the undisclosed conveyance of that creator's recorded identity into a separate commercial enterprise to train AI models.

69. Defendants, by contrast, retained a measurable benefit: the market value of the training material they did not buy, the licensing and acquisition costs their competitors bear and Defendants avoided, and the revenue and enterprise value attributable to models improved with the Class's material.

70. Plaintiff and the Class lost money and property. Their recorded performances, their identifying attributes, and the exclusive right to license the commercial use of those attributes are property interests in which they hold a vested interest, and Defendants appropriated and monetized them without compensation, diminishing their value.

## CLASS ALLEGATIONS

71. Plaintiff brings this action on behalf of herself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **Nationwide Class**
> All natural persons in the United States who, during the Class Period, published content to a Twitch channel or account in which they were readily identifiable by name, voice, photograph, likeness, or other indicia of identity, and whose Twitch content Defendants used in the development, training, evaluation, or improvement of Defendants' generative artificial intelligence models or services.
>
> **California Subclass**
> All natural persons in California who, during the Class Period, published content to a Twitch channel or account in which they were readily identifiable by name, voice, photograph, likeness, or other indicia of identity, and whose Twitch content Defendants used in the development, training, evaluation, or improvement of Defendants' generative artificial intelligence models or services.

72. Excluded from the Classes are Defendant and their affiliates, officers, directors, assigns, successors, and the Judge(s) assigned to this case.

73. **Numerosity:** While the precise number of Class members has not yet been determined, members of the Classes are so numerous that their individual joinder is impracticable, as the proposed Classes appear to potentially include millions of members who are geographically dispersed.

74. **Typicality:** Plaintiff's claims are typical of Class members' claims. Plaintiff and all Class members were injured through Defendants' uniform misconduct, and Plaintiff's claims are identical to the claims of the Class members they seek to represent. Accordingly, Plaintiff's claims are typical of Class members' claims.

75. **Adequacy:** Plaintiff's interests are aligned with the Classes they seek to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged data privacy violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously. The Classes' interests are well-represented by Plaintiff and undersigned counsel.

76. **Superiority:** A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class members' claims. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class members individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

77. **Commonality and Predominance:** The following questions common to all Class members predominate over any potential questions affecting individual Class members:

- whether Defendants engaged in the wrongful conduct alleged herein;
- whether Defendants acted intentionally in violating Plaintiffs' and Class members' privacy rights under the California common law and Cal. Civ. Code § 3344;

- whether Defendants' conduct alleged herein violated privacy rights and invaded Plaintiff's and Class members' privacy;
- whether injunctive relief is appropriate to prevent continued exploitation of identity-bearing training materials and systems developed from them; and
- whether Plaintiff and Class members are entitled to damages, equitable relief, or other relief and, if so, in what amount.

78. Given that Defendants engaged in a common course of conduct as to Plaintiff and the Classes, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Right of Publicity Statute**
**Cal. Civ. Code § 3344**
**(On Behalf of Plaintiff and the Nationwide Class,**
**or in the alternative California Subclass, against Amazon and Twitch)**

79. Plaintiff incorporates each preceding allegation as though fully set forth in this Count.

80. Section 3344(a)(1) imposes liability on "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without that person's prior consent." Cal. Civ. Code § 3344(a)(1).

81. The statute defines "photograph" to include "any photograph or photographic reproduction, still or moving, or any videotape or live television transmission, of any person, such that the person is readily identifiable," and provides that a person is readily identifiable "when one who views the photograph with the naked eye can reasonably determine that the person depicted in the photograph is the same person who is complaining of its unauthorized use." Cal. Civ. Code § 3344(b), (b)(1).

82. Each Defendant is a person within the meaning of the statute.

83. Plaintiff and each Class member are readily identifiable in their Twitch content by one or more of their name, voice, photograph, and likeness. Creators who appear on camera are identifiable by face and body; creators who do not are identifiable by their recorded natural voices, their names or

handles, and the personas associated with their accounts. In each case a viewer or listener can reasonably determine that the person recorded is the Class member complaining of the use.

84. The names, voices, photographs, and likenesses of Plaintiff and the Class have commercial value. That value is the foundation of the creator economy in which the Class participates, and it is separately reflected in the established market in which developers of generative artificial intelligence systems pay for audiovisual material of this kind.

85. Defendants acquired, copied, ingested, selected, processed, and retained the recorded content in which Plaintiff's and the Class's names, voices, photographs, and likenesses appear, and used that content to create, train, evaluate, tune, and improve generative artificial intelligence models and services.

86. Defendants' use was "on or in products, merchandise, or goods" within the meaning of the statute. The models and services Defendants developed and commercialized are the products; the Class members' recorded identities were used in and incorporated into the development of those products. The use was not incidental to some unrelated expressive publication. The use was the manufacturing process itself: Defendants took Plaintiff's and the Class's identifying attributes because recorded human identity was the input the products required. Defendants also used, and continue to use, the resulting capabilities in and in connection with products and services that Defendants advertise, sell, and solicit purchases of.

87. Defendants' use was knowing. Defendants knew that Twitch content consists of recordings of identifiable human beings; Defendants' own materials describe the content categories they used, which include recordings of creators and images of and text identifying their channels; and Defendants' own conduct — enabling the practice by default, declining to seek consent, and rewriting the governing documents on the day of disclosure — establishes that Defendants understood both what they were taking and that they lacked permission to take it.

88. Plaintiff and the Class members never provided their informed affirmative consent to the exploitation of their name, voice, photograph, or likeness for the development of Defendants' generative artificial intelligence products.

89. No statutory exception applies. Defendants' use was not in connection with any news, public affairs, or sports broadcast or account, or any political campaign, within the meaning of Section 3344(d). Defendants are not owners or employees of an advertising medium within the meaning of Section 3344(f), and in any event Defendants had knowledge of the unauthorized use. The presumption in Section 3344(c) has no application because Plaintiff and the Class are not Defendants' employees and the use was essential rather than incidental.

90. As a direct and proximate result, Plaintiff and the Class have been injured, including through the loss of the licensing value of their identities, the loss of their exclusive right to control the commercial use of those identities, the diminution of the market and exclusivity value of their identities, and the transfer of that value to Defendants without payment.

91. Plaintiff and the Class are entitled under Section 3344(a)(1) to the greater of seven hundred fifty dollars ($750) or their actual damages for each actionable unauthorized use by Amazon; to Amazon's profits attributable to the unauthorized use and not accounted for in actual damages, as to which Plaintiff and the Class need prove only gross revenue attributable to the use, with Amazon bearing the burden of proving deductible expenses; to punitive damages; and to attorneys' fees and costs as the prevailing party. Plaintiff and the Class also seek injunctive relief only as against Twitch, as well as injunctive relief against Amazon, including under Section 3344(a)(2).

**COUNT II**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL")**
**(On Behalf of Plaintiff and the Nationwide Class,**
**or in the alternative California Subclass, against Amazon and Twitch)**

92. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

93. Plaintiff brings this claim individually and on behalf of the Class members against Defendants.

94. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

95. Both Defendants are "person[s]" as Cal. Bus. & Prof. Code § 17201 defines that term.

96. The acts, omissions, and conduct of Defendants as alleged herein constitute "business practices" within the meaning of the UCL.

97.

**Unlawful**

98. Defendants' practices are unlawful because each transgresses other law: Cal. Civ. Code § 3344; the California common-law tort of commercial misappropriation of identity; among others. Any one of those violations, standing alone, satisfies the unlawful prong.

**Unfair**

99. Defendants' practices are independently unfair. Defendants appropriated the commercial value of millions of individuals' identities to improve products Defendants sell, without consent and without compensation, knowing that the material had an established market price and that other buyers pay it. Defendants enabled the practice by default precisely because they understood that creators would not agree to it if asked; concealed the practice while it was underway; disclosed it only after years of use; and rewrote the governing documents on the day of disclosure in an effort to manufacture the authorization they had never obtained.

100. Those practices offend established public policy, including the policies embodied in Cal. Civ. Code §§ 3344 and 3344.1, Cal. Lab. Code § 927, and Article I, Section 1 of the California Constitution, and they are, in addition, oppressive and unscrupulous in the ordinary sense of those words.

101. The gravity of the harm to Plaintiff and the Class — the uncompensated and practically irreversible appropriation of their recorded identities, and the destruction of their exclusive right to control the commercial use of those identities — substantially outweighs any utility of Defendants' conduct. Lawful alternatives were available and remain available: Defendants could have sought affirmative informed consent or paid market rates for the material, as participants in the training-data licensing market do. The resulting injury is substantial, is not outweighed by any countervailing benefit to consumers or competition, and was not reasonably avoidable by Plaintiff or the Class, from whom the practice was concealed and to whom no notice was given.

**Fraudulent**

102. Defendants' practices had the capacity to mislead, and did mislead, reasonable members of the public. Defendants never provided informed disclosure to Plaintiffs of their practices or an opportunity for class members to provide informed affirmative consent.

103. The omitted facts were material. Reasonable creators would attach importance to whether their recorded faces, voices, and names were being used to build commercial artificial intelligence products in deciding whether, where, and on what terms to publish. Plaintiff relied on Defendants' representations and omissions by maintaining her account and continuing to publish, and would have acted differently had the truth been disclosed.

104. Plaintiff and the Class lost money and property as a result of Amazon's unlawful, unfair, and fraudulent practices. Their recorded performances and identifying attributes are property in which they hold a vested interest; Amazon took that property without compensation, diminished its licensing and market value, deprived Plaintiff and the Class of the compensation the market places on such material, and deprived them of control over its commercial exploitation.

105. Plaintiff and the Class lack an adequate remedy at law for the prospective relief they seek. Defendants' conduct is ongoing; models, datasets, and derived systems already built from the Class's material remain in Defendants' possession and continue to be deployed and monetized; and no damages award can halt the continued capture and exploitation of newly published content or restore the exclusivity already lost. Injunctive relief is the only remedy that reaches Defendants' future conduct.

106. The harm caused by Defendants' conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendants' legitimate business interests other than Defendants' conduct described therein.

107. As a result of Defendant's violations of the UCL, Plaintiff and Class members are entitled to injunctive relief. This is particularly true since Defendants have shown the ability and willingness to engage in the alleged conduct.

108. As a direct and proximate result of Amazon's violations, Plaintiff and Class members have suffered injury in fact and lost money by having their browsing activity collected and sold to third parties without their consent.

**COUNT III**
**Violations of the Common Law**
**Right of Publicity/Commercial Misappropriation**
**(On Behalf of Plaintiff and the Nationwide Class, or in the alternative California Subclass, against Amazon and Twitch)**

109. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

110. Plaintiff brings this claim individually and on behalf of the Class against Defendant.

111. Plaintiff incorporates each preceding allegation as though fully set forth in this Count.

112. California common law recognizes each person's proprietary interest in the commercial value of his or her own identity and imposes liability for the appropriation of that interest to the defendant's advantage.

113. Plaintiff and the Class own the commercial value of their identities, including their names, voices, photographs, likenesses, personas, and the characteristic manner of appearance and speech by which their audiences recognize them. Defendants appropriated that value. Defendants took the recorded embodiments of Plaintiff's and the Class's identities and used them as the raw material from which Defendants built commercial generative artificial intelligence systems.

114. Defendants appropriated Plaintiff's and the Class members' identities to Defendants' own advantage, commercial and otherwise: Defendants avoided the cost of negotiated licenses that other participants in the same market pay; obtained a large, continuously replenished, and otherwise unobtainable supply of recorded human audiovisual material; improved the capability and competitiveness of products Defendants sell; accelerated the development of those products; and increased the revenue and enterprise value attributable to them.

115. Plaintiff and the Class did not consent to that appropriation.

116. Plaintiff and the Class suffered resulting injury, including the loss of licensing value, the loss of control over whether and on what terms their identities are commercially exploited, the

impairment of the exclusivity that gives their identities value, and the uncompensated transfer of economic value to Defendants.

117. Plaintiff and the Class seek to recover actual and compensatory damages from Amazon, including the portion of Amazon's profits attributable to the misappropriation, restitution to the extent it is available, and punitive damages; and injunctive relief against Amazon and Twitch; and whatever further remedy the law affords.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class against Amazon)**

118. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

119. Plaintiff brings this claim individually and on behalf of the Class against Defendant.

120. Plaintiff brings this claim pursuant to California law.

121. Plaintiff and the Class conferred a measurable benefit on Defendants: the recorded audiovisual embodiments of their identities and performances, used as development, training, and evaluation material for Defendants' commercial generative artificial intelligence systems.

122. Defendants knowingly accepted, used, and retained that benefit. Defendants' models and services were improved with material Defendants did not license from Plaintiff or the Class, permitting Defendants to avoid costs they otherwise would have incurred to obtain this material or comparable material.

123. What Defendants gained can be measured. A commercial market exists in which developers of artificial intelligence systems pay content owners and rights holders for training material, at rates the sellers themselves have described publicly and that appear in the financial disclosures of the companies that sell it. By taking Plaintiff's and the Class's recorded identities without a license and without negotiation, Defendants obtained for free what participants in that market pay for, and retained the savings.

124. Defendants' retention of that benefit is unjust under the circumstances alleged: Defendants took the material without notice or consent; concealed the practice while it was underway.

125. Had Plaintiff and the Class known of Defendants' conduct, they would not have supplied their content and recorded identities to Defendants on the same terms.

126. Under principles of restitution and unjust enrichment, Plaintiff and the Class are entitled to restitution and to disgorgement of the profits, avoided costs, and other benefits attributable to Defendants' use of their content and identities, without regard to whether a given Class member can trace a matching out-of-pocket loss. Defendants should be compelled to disgorge those benefits into a common fund for the benefit of Plaintiff and the Class.

127. When a defendant is unjustly enriched at the expense of a plaintiff, the plaintiff may recover the amount of the defendant's unjust enrichment even if plaintiff suffered no corresponding loss, and plaintiff is entitled to recovery upon a showing of merely a violation of legally protected rights that enriched a defendant.

128. Defendant has been unjustly enriched by virtue of their violations of Plaintiff's and members of the Classes' legally protected rights to privacy as alleged herein, entitling Plaintiff and members of the Classes to restitution of Defendant's enrichment. "[T]he consecrated formula 'at the expense of another' can also mean 'in violation of the other's legally protected rights,' without the need to show that the claimant has suffered a loss." RESTATEMENT (THIRD) OF RESTITUTION § 1, cmt. a.

129. Amazon was aware of the benefit conferred by Plaintiff and members of the Class. Amazon therefore acted in conscious disregard of the rights of Plaintiff and members of the Class and should be required to disgorge all profit obtained therefrom to deter Amazon and others from committing the same unlawful actions again.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Classes seeks injunctive relief only as against Twitch and respectfully requests that the Court grant the following relief:

A. Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as class representative and undersigned counsel as class counsel;

B. Award Amazon's profits attributable to its unauthorized uses;

C. Award punitive and exemplary damages as permitted by law as against Amazon;

D. Award Plaintiff and Class members actual and statutory damages to the maximum extent allowable as against Amazon;

E. Award Plaintiff and Class members pre-judgment and post-judgment interest to the maximum extent allowable as against Amazon;

F. Award Plaintiff and Class members reasonable attorneys' fees, costs, and expenses, as allowable;

G. Award restitution, disgorgement, and other equitable monetary relief to the extent available and nonduplicative as against Amazon;

H. Enter preliminary and permanent injunctive relief prohibiting Defendants from using Plaintiff's and Class members' identities and identity-bearing Twitch content for future generative-AI training or development without legally sufficient prior consent, and ordering the destruction of any and all appropriated content s and derived materials;

I. Order an accounting sufficient to determine Amazon's uses of Class content, the Amazon models and services that benefited, the periods of use, avoided licensing costs, revenues, and profits attributable to the challenged conduct; and

J. Award Plaintiff and Class members such other favorable relief as allowable under law or at equity as against Amazon.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 26, 2026

Respectfully submitted,

*/s/ Tina Wolfson*

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Sarper Unal (SBN 341739)
sunal@ahdootwolfson.com
Lisa Cintron (SBN 356009)
lcintron@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500

Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Class Counsel for Plaintiff and the Proposed Class*